NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0299-13T4

UNITED WATER NEW JERSEY, INC.,

    Plaintiff-Respondent,

v.

BOROUGH OF HILLSDALE, MAYOR
AND COUNSEL OF THE BOROUGH OF
HILLSDALE,

    Defendants.

_____

HILLSDALE & WESTWOOD FLOOD
SOLUTION GROUP, and ANTONIO
XAVIER AND WENDY XAVIER,

    Intervenors-Appellants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **November 26, 2014** |
| **APPELLATE DIVISION** |

Argued October 28, 2014 — Decided November 26, 2014

Before Judges Yannotti, Hoffman and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4634-12.

Donald S. MacLachlan argued the cause for appellants (MacLachlan Law Offices, LLC, attorneys; Mr. MacLachlan, on the briefs).

Thomas J. Herten argued the cause for respondent (Archer & Greiner, P.C.,

attorneys; Mr. Herten, of counsel; Andrew T. Fede, on the brief).

Lisa M. Almeida, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey Department of Environmental Protection (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Almeida, on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Intervenors Hillsdale and Westwood Flood Solution Group (the "HWFSG"), Antonio Xavier and Wendy Xavier (the "Xaviers") appeal from an order of the Law Division dated August 1, 2013, finding that the Borough of Hillsdale ("Hillsdale" or the "Borough") was preempted by state law from applying its land use approval requirements and other ordinances to a dam improvement project to be undertaken by plaintiff United Water New Jersey, Inc. ("UWNJ" or the "Company"). We affirm but remand for entry of a modified judgment.

## I.

The relevant facts are essentially undisputed. UWNJ provides water to customers in sixty municipalities in Bergen and Hudson Counties. To do so, UWNJ utilizes, among other facilities, the Woodcliff Lake Reservoir, which is located in Hillsdale and the Borough of Woodcliff Lake ("Woodcliff Lake"). One of the reservoir's structures is a dam across the Pascack

Brook, which UWNJ's predecessor, Hackensack Water Company, constructed in 1904. The dam is traversed by Church Road, a private road owned by UWNJ that is subject to use easements held by Hillsdale and Woodcliff Lake.

The New Jersey Department of Environmental Protection (the "NJDEP") has classified the dam as a "Class I, High Hazard" structure pursuant to N.J.A.C. 7:20-1.8(a)(1), because there are "normally occupied homes in the area that are susceptible to significant damage in the event of a dam failure." N.J.A.C. 7:20-1.8(a)(1)(i). Between 2005 and 2006, the NJDEP asked UWNJ to undertake a study of the dam "to determine the maximum probable precipitation and water runoff volume projected to flow into the [Woodcliff Lake Reservoir] during future severe weather events."

UWNJ retained engineering consultants to perform the study and in 2007, they reported that, in the event of severe precipitation, "excess storm related water could rise and overtop the [d]am." The consultants recommended "doubling the amount of impounded water passed downstream from the [dam] into the Pascack Brook."

On December 20, 2007, the NJDEP notified UWNJ that the dam was not in compliance with spillway capacity regulations adopted pursuant to the Safe Dam Act (the "SDA"), N.J.S.A. 58:4-1 to

-14. The NJDEP directed UWNJ to make modifications to the dam to address this condition. UWNJ developed a plan to modify the dam, and provided the plan to Hillsdale for informational purposes. Thereafter, UWNJ submitted its plan to the NJDEP, accompanied by construction drawings, details, and specifications prepared by its professional engineers.

On November 7, 2011, the NJDEP granted UWNJ a permit, requiring the Company to "construct an auxiliary spillway, rehabilitate the low level outlet and rehabilitate the dikes for" the dam. The NJDEP's permit approved the drawings prepared by UWNJ's engineers, as well as certain technical specifications. The permit specified the terms and conditions for the project.

Those terms and conditions indicated that the work was at all times subject to supervision and inspection by the NJDEP's Bureau of Dam Safety and Flood Control (the "Bureau"); no changes to the approved plans may be made without the Bureau's written consent; all construction activities must be undertaken in accordance with dam safety standards in N.J.A.C. 7:20-1.10; construction work on lands encompassed by the permit shall be stabilized in accordance with standards for soil erosion and sediment control; trees or brush shall not be allowed to grow on the dam structure; and after construction, inspection reports

shall be submitted to the Bureau in accordance with the standards in N.J.A.C. 7:20-1.11.

In addition, the permit required UWNJ to obtain a current and valid water lowering permit from the Bureau of Freshwater Fisheries for the manipulation of water levels of any lake or impoundment. The permit also stated in bold typeface that it did not give any property rights to its holder, and that it would not be valid "until such time as all other required approvals and permits have been obtained."

Along with the permit, John H. Moyle, P.E. ("Moyle"), the manager of the NJDEP's Bureau of Dam Safety and Flood Control, issued a letter. In that letter, Moyle stated that because the dam was not in compliance with applicable safety standards, and posed a potential hazard, construction of the dam improvements must begin within six months.

On January 10, 2012, Hillsdale advised UWNJ that the dam modification project required site plan approval from the Borough's planning board. UWNJ's attorney responded with a letter dated March 13, 2012, asserting that site plan and conditional use approval were not required for the project. The planning board's attorney replied in a letter dated April 2, 2012, asserting that the board had jurisdiction to review the project.

On May 1, 2012, Hillsdale adopted Ordinances No. 12-09 and 12-10. Ordinance No. 12-09 amended the tree removal provisions of the borough's land use ordinances. Ordinance No. 12-10 revised the conditional use standards for public utilities. The ordinance required public utilities to submit formal applications for site plan approval of such uses.

That same day, UWNJ filed a petition with the Board of Public Utilities (the "BPU") pursuant to the Municipal Land Use Law ("MLUL"), specifically N.J.S.A. 40:55D-19, which provides, among other things, that a municipal ordinance or regulation adopted pursuant to the MLUL shall not apply to a public utility's development in more than one municipality, if the BPU determines that the installation "is reasonably necessary for the service, convenience or welfare of the public."

On February 20, 2013, the BPU issued an opinion and order on UWNJ's petition. The BPU noted that there was no dispute requiring it to decide whether the project is reasonably necessary for the service or convenience of the public. The BPU noted that the NJDEP had maintained that its authority under the SDA and the Water Supply Management Act (WSMA), N.J.S.A. 58:1A-1 to -26, completely preempted local regulation of the dam and reservoir.

A-0299-13T4

The BPU accepted, without ruling on, the NJDEP's assertion that the SDA and WSMA preempted local ordinances. The BPU noted that the NJDEP had asserted jurisdiction over dam safety and reliability under the SDA and it declined to consider issues over which the NJDEP had claimed preemption. The BPU elected not to exercise its jurisdiction pursuant to N.J.S.A. 40:55D-19, and dismissed the petition, stating that any party could file a petition if, in the future, an issue arises in an area in which the NJDEP has not claimed preemption.

On June 15, 2012, UWNJ filed an action in lieu of prerogative writs in the Law Division. UWNJ alleges, among other things, that Hillsdale adopted and sought to enforce ordinances that were preempted by state law, and that the NJDEP had exclusive jurisdiction over the project. On July 26, 2012, Hillsdale and its Mayor and Council filed an answer to the complaint.

Thereafter, the trial court permitted the HWFSG and the Xaviers to intervene in the action pursuant to Rule 4:33-2, but limited their participation to the preemption issues raised in paragraph 89 of the complaint.[1] The court bifurcated the matter

---

[1] In that paragraph, UWNJ alleged that Ordinances 12-09 and 12-10 violate substantive due process "because they seek to regulate the Dam Improvement Project when such regulation is preempted by, and exclusive jurisdiction rests with the NJDEP."

A-0299-13T4

and determined that it would adjudicate the preemption claims first, with the other claims to be tried in a separate proceeding, if necessary.

The court conducted a trial in the matter on April 23, 2014, which was limited to oral argument by counsel and consideration of the documentary evidence presented by the parties. Thereafter, the court filed an opinion finding that the NJDEP has exclusive jurisdiction over the project pursuant to the SDA and the WSMA. The court determined that Hillsdale's ordinances are preempted by these statutes. The order that accompanied the opinion stated that Hillsdale is "preempted from imposing on [UWNJ] local land use approval requirements, as well as requiring compliance with Hillsdale's soil movement and tree removal ordinances."

On September 16, 2013, intervenors filed a notice of appeal. The Borough has not appealed. Thereafter, we granted the NJDEP's motion for leave to participate in the appeal as amicus curiae.

## II.

Intervenors argue that the trial court erred by finding that Hillsdale is preempted from applying its ordinances to the UWNJ's dam modification project. Intervenors argue that they are not challenging the NJDEP's exclusive authority to enforce the

SDA and the WSMA. They contend, however, that the fact that the NJDEP issued a permit for the construction of modifications to the dam does not exempt UWNJ from complying with certain local zoning laws and other regulations.

Intervenors maintain that Hillsdale's ordinances do not address or seek to regulate the "construction, operation, maintenance or repairs" of the dam structure. According to intervenors, the ordinances merely seek to require municipal review and evaluation of the "construction, operation, maintenance or repairs" through the municipal site plan review process, so that certain "legitimate local concerns" may be addressed.

Intervenors assert that UWNJ "thwarted" the early review process contemplated by the ordinances when it refused to submit to the required site plan review process before obtaining a permit from the NJDEP. Intervenors maintain that the intent of the ordinances is to address "specified local concerns" with the public utility, so that the parties "may at least attempt to arrive at a mutually acceptable plan which addresses the local concerns and can then be submitted to NJDEP for review and approval, before the permit is issued."

We note again that the trial court limited HWFSG's and the Xaviers' intervention to the preemption issues raised in

paragraph 89 of UWNJ's complaint, which pertains to the claim that Ordinances No. 12-09 and No. 12-10 are preempted by state law. We are convinced that the trial court correctly determined that Hillsdale was preempted by state law from applying these ordinances to UWNJ's dam improvement project.

The Supreme Court has identified several factors to be considered in determining whether a municipal ordinance is preempted by state law. Mack Paramus Co. v. Mayor & Council of Paramus, 103 N.J. 564, 573 (1986) (citing Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461-62 (1976)). Those factors are:

> 1. Does the ordinance conflict with [the] state law, either because of conflicting policies or operational effect[,] []that is, does the ordinance forbid what the Legislature has permitted . . . ?
>
> 2. Was the state law intended[] expressly or impliedly[] to be exclusive in the field?
>
> 3. Does the subject matter reflect a need for uniformity?
>
> 4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
>
> 5. Does the ordinance stand []as an obstacle to the accomplishment and execution of the full purposes and objectives[] of the Legislature?
>
> [Ibid. (quoting Overlook Terrace, supra, 71 N.J. at 461-62) (alterations in original).]

The SDA prohibits the making of repairs, alterations, or improvements to existing dams on any river or stream in New Jersey, without the consent of the Commissioner of Environmental Protection ("Commissioner") if the project involved will cause the waters in the river or stream to rise more than five feet above its mean low-water height. N.J.S.A. 58:4-1a. The SDA requires any entity "owning and maintaining or having control of" a dam, upon written request, to furnish the Commissioner with a description of the dam, as well as any surveys, plans, and drawings that might be necessary for the Commissioner to make a determination regarding the dam's safety. N.J.S.A. 58:4-3.

The SDA provides that owners or other persons having control of reservoirs or dams must "[i]mplement all measures required" by the SDA. N.J.S.A. 58:4-5a(1). The SDA also provides that owners and others having control of a reservoir or dam must take actions deemed necessary to bring a reservoir or dam into compliance with SDA standards, or "any rule or regulation adopted, or permit or order issued pursuant thereto." N.J.S.A. 58:4-5a(3).

We are convinced that, in the SDA, the Legislature contemplated uniform regulation by the NJDEP of the design, construction, operation and maintenance of dams and reservoirs

11                                                    A-0299-13T4

in this State. The SDA reflects the Legislature's intention that regulation of such matters should be uniform on a state-wide basis. Furthermore, the State's regulatory scheme for dams and reservoirs is pervasive and comprehensive, thereby precluding the co-existence of municipal regulation of the sort reflected in Hillsdale Ordinances No. 12-09 and No. 12-10.

Ordinance No. 12-09 prohibits the removal of more than three trees from a lot in the Borough within a calendar year. The ordinance requires that every tree removed from a flood plain be replaced with four trees. The ordinance gives the planning board jurisdiction to waive the requirements of the ordinance "if the literal enforcement of one or more provisions is impracticable or will exact [undue] hardship because of peculiar conditions pertaining to the land in question."

Ordinance No. 12-09 directly conflicts with the regulations adopted by the NJDEP pursuant to the SDA. Among other things, those regulations provide that trees are not permitted on a dam embankment unless approved by the NJDEP. N.J.A.C. 7:20-1.4(n). Moreover, the permit issued to the NJDEP for the project requires the removal of trees as part of the dam improvement project. Hillsdale's tree removal ordinance stands as an obstacle to the uniform regulation by the NJDEP of dam design, construction, operation and maintenance of dams and reservoirs

in this State. The trial court correctly determined that the ordinance could not be applied to UWNJ's project.

The same conclusion applies to Ordinance No. 12-10, which establishes "conditional use standards for public utilities." The ordinance provides, among other things, that the Borough's land use boards have authority to review, deny, or approve with conditions, plans for any "design, redesign, construction, repair, replacement, improvement, modification, upgrade, rehabilitation, alteration, expansion, or addition to any [utility development]" before construction may begin.

Ordinance No. 12-10 conflicts with the NJDEP's exclusive authority to regulate dam design, construction, operation, and maintenance under the SDA. The regulations adopted by the NJDEP pursuant to the SDA require the owner or those in control of a dam to obtain a permit for modifications to the dam. The permit application must address the design, structure, stability, elevations, spillway and overflow details, the project schedule and other technical matters. N.J.A.C. 7:20-1.7(b) to (e).

Furthermore, as indicated by the permit that the NJDEP issued for the project, the improvements must be undertaken in accordance with the approved plans and specifications. Moreover, due to the danger presented by the dam's condition, the NJDEP required UWNJ to begin making the improvements within six months

after the permit was issued. The trial court correctly determined that the ordinance requiring UWNJ to obtain site plan approval from the Borough's planning board conflicts with the NJDEP's pervasive regulation in this area under the SDA.

Intervenors argue that Ordinance No. 12-10 addresses matters that fall outside the purview of the NJDEP's exclusive regulation of dam construction, operation, maintenance and repair. Intervenors point to certain conditions imposed by the ordinance, which they say pertain solely to matters of local concern. We are convinced, however, that requiring UWNJ to secure site plan approval pursuant to Ordinance No. 12-10, and compliance with the requirements imposed by that ordinance, would substantially undercut the NJDEP's pervasive regulation under the SDA by superimposing local site plan review upon the NJDEP's permitting process.

The ordinance empowers the Borough's local planning board to impose conditions in addition to those required by the NJDEP, and to deny approval of the project unless those conditions are met. The exercise of such regulatory authority cannot coexist with the exclusive authority conferred upon the NJDEP in the SDA. Moreover, local review of the modifications could delay construction that the NJDEP directed UWNJ to begin promptly.

          A-0299-13T4

Intervenors further argue that the NJDEP could, in the exercise of its regulatory authority, override conditions imposed by the Borough pursuant to the ordinance. However, the ordinance does not provide for the NJDEP's review of any local planning board action. By its terms, the ordinance allows the local board to delay or disapprove a dam improvement project unless it meets the conditions imposed therein.

In addition, Ordinance No. 12-10 provides for local oversight of the impact a dam improvement project might have on the Borough's management of its stormwaters. This provision of the ordinance conflicts with the NJDEP's authority under the WSMA. Under the WSMA, the NJDEP has the exclusive authority to "control, conserve, and manage the water supply of the State and the diversions of that water supply." N.J.S.A. 58:1A-5.

The NJDEP has adopted comprehensive regulations governing the water supply, which include a detailed application process for water supply allocation or diversion in the public interest. See, e.g., N.J.A.C. 7:19-2.2(a) to (f). Decisions as to the allocation and diversion of water from the dam are conferred upon the NJDEP by the WSMA, and the NJDEP's pervasive authority in this area precludes local regulation of the sort contemplated by Ordinance No. 12-10.

In support of their arguments, intervenors rely upon Shupack v. Manasquan River Reg'l Sewerage Auth., 194 N.J. Super. 199 (App. Div. 1984). There, the Regional Sewerage Authority (the "Authority") obtained approval of the NJDEP and the federal Environmental Protection Agency to construct a sewerage pumping station. Id. at 201. The Township of Howell (the "Township") and its construction official maintained that the Authority was required to obtain site plan approval for the project under the Township's land use ordinance, as well as a construction permit pursuant to the State Uniform Construction Code (the "UCC"). Id. at 202.

In response, the Authority argued that construction of the pumping station was governed by the Water Pollution Control Act ("WPCA"), N.J.S.A. 58:10A-1 to -69, and the Sewerage Authorities Law ("SAL"), N.J.S.A. 40:14A-1 to -45, which exempted it from compliance with the local permit and approval requirements. Id. at 203. We held that the Authority was required to obtain site plan approval from the local planning board, and construction permits pursuant to the UCC. Id. at 204-05.

We noted that neither the WPCA nor the SAL was "particularly concerned with the construction aspect of the facilities nor with aesthetic considerations in the sense that such matters are regulated by permits issued under the [UCC] or

A-0299-13T4

site plan approval ordinances." Id. at 204. We concluded that the Township's plan approval ordinance was not preempted by the WPCA or the SAL. Id. at 205. We also saw no inconsistency between those laws and the requirement that the Authority obtain a building permit for the project. Ibid.

We said, however, that our opinion should not be read to approve "any procedure relating to site plan approval or building permits that would interfere with the purposes of the project as authorized by the [WPCA] or the [SAL]." Ibid. We noted that the Township and its construction official had not taken the position that the municipality had the power "to prohibit by zoning proscription the construction of the [project], including the building for which it is claimed site plan approval and construction permits should have been issued." Ibid. (internal quotation marks omitted).

In our view, intervenors' reliance upon Shupack is misplaced. Here, the Borough's ordinance confers upon the local planning board the power to deny site plan approval if the project does not meet the specified conditions, even though those conditions have not been imposed by the NJDEP through its permitting process. The ordinance is concerned with matters over which the NJDEP has exclusive authority under the SDA and the WSMA, and it essentially allows the municipality to prohibit by

17

zoning proscription the construction of the project. Thus, Shupack is not inconsistent with our conclusion that the Borough's site plan approval ordinance is preempted.

Intervenors also rely upon Morris Cnty. Fair Hous. Council v. Boonton Twp., 228 N.J. Super. 635 (Law Div. 1988), aff'd, 230 N.J. Super. 345 (App. Div. 1989). In that case, the municipality agreed to change its zoning regulations to allow the construction of a number of units of lower income housing. Id. at 638-39. In furtherance of this agreement, the municipality rezoned certain properties, and the intervenors sought site plan approval for a development. Id. at 639. The plans provided that stormwater would be directed to a reservoir and then released to downstream properties. Ibid.

The local planning board denied site plan approval, finding among other things, that the proposal did not include an adequate stormwater management plan. Id. at 639-40. The board noted that the reservoir included a dam, which was in need of repairs and/or modification. Id. at 640. The trial court upheld that decision, noting that site plan approval was subject to improvements to the dam and reservoir. Id. at 645-46. The trial court stated that the repairs or modifications to the dam and reservoir were subject to the approval by the NJDEP. Id. at 646. The court held that the planning board did not act arbitrarily,

A-0299-13T4

capriciously or unreasonably in denying site plan approval because it could not determine whether the applicants' stormwater management plan was adequate until the NJDEP acted. Id. at 646.

The Morris County case does not support intervenors' position in this case. As we have explained, in Morris County, the court emphasized that the NJDEP had exclusive authority to decide what modifications had to be made to the reservoir and dam. The court did not suggest that a local planning board could impose conditions upon a dam improvement project, as part of the site plan approval process, in addition to those imposed by the NJDEP in its permit approving the project.

## III.

Intervenors also contend that the trial court failed to provide adequate findings of fact to support its decision. We do not agree. Here, the court's decision was based on the undisputed facts concerning the project and the terms of Ordinances No. 12-09 and No. 12-10. The court determined, as a matter of law, that the Borough was preempted from applying these ordinances to the project. The court's findings of fact were sufficient to support its determination.

Intervenors further argue that the trial court did not address the following issues: (1) whether issuance by the NJDEP

19

of a dam construction permit precludes local land use regulation of the sort reflected in the conditional use ordinance; (2) whether the NJDEP's permit effectively exempts UWNJ from complying with local zoning or other law "wherever and whenever"; and (3) whether the permit makes the Borough's Church Road easement null and void, thereby taking property rights away from the Borough and unilaterally granting those rights to the NJDEP or UWNJ.

The trial court's opinion makes clear, however, that the NJDEP's regulatory authority over dam construction and safety under the SDA, and its exclusive authority to regulate the water supply under the WSMA preclude application of the Borough's conditional use and tree removal ordinances to the project. Moreover, the court's decision was limited to the issue of preemption presented in the complaint and did not address the question of whether UWNJ is exempt from local zoning and other laws "wherever and whenever."

Furthermore, the court's decision does not address the effect the project might have on the Borough's easement rights to the Church Road. That issue was not raised in the complaint and it was beyond the limits imposed on intervenors' participation in the case.

Intervenors additionally argue that, in the permit for the project, the NJDEP acknowledged that the Borough could exercise regulatory authority over the project as to matters of local concern. The permit states in pertinent part:

> This permit DOES NOT GIVE ANY PROPERTY RIGHTS, in either real or personal property or material, nor any exclusive privileges; neither does it authorize any injury to private property, nor invasion of private rights, nor any infringement of Federal, State or local laws or regulations; nor does it waive the obtaining of Federal or other State or local government consent when necessary. THIS PERMIT IS NOT VALID AND NO WORK SHALL BE UNDERTAKEN UNTIL SUCH TIME AS ALL OTHER REQUIRED APPROVALS AND PERMITS HAVE BEEN OBTAINED.

Intervenors contend that the permit requires UWNJ to obtain local approval for the project, and that the permit is not valid until such approval is obtained. Intervenors also assert that the permit mandates that "the right of Hillsdale pursuant to the grant of easement from [plaintiff] to 'supervise and control' Church Road, the roadway which passes upon the top of the Dam, must stand intact." Again, we disagree.

As the trial court observed, the above-quoted language merely is intended to ensure that UWNJ obtains all necessary permits and consents. The court also noted that UWNJ had conceded that the language in the permit quoted above applies to necessary NJDEP wetlands or fish and wildlife permits. The court

21

correctly found that the NJDEP's permit does not recognize local regulation of the project of the sort reflected in Ordinances No. 12-09 and No. 12-10.

The other arguments raised by intervenors are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

We therefore conclude that the trial court correctly determined that the Borough may not apply Ordinances No. 12-09 and No. 12-10 to the UWNJ's dam improvement project.

We note, however, that the court's order goes beyond the scope of the issues raised in the pleadings. As we stated previously, the order provides that Hillsdale is "preempted from imposing on [UWNJ] local land use approval requirements, as well as requiring compliance with [its] soil movement and tree removal ordinances." The pleadings made no mention of the soil movement ordinance, and the litigation was limited to whether Ordinances No. 12-09 and No. 12-10 are preempted by state law.

The judgment should be modified accordingly, and the ruling limited to the two ordinances referenced in paragraph 89 of the complaint. The order should state that the Borough is precluded from applying those ordinances to the UWNJ's Woodcliff Lake dam improvement project. We therefore affirm and remand the matter to the trial court for entry of an order modifying the judgment to state that the Borough is preempted by the SDA and the WSMA

A-0299-13T4

from applying Ordinances No. 12-09 and No. 12-10 to UWNJ's Woodcliff Lake dam improvement project.

Affirmed and remanded for entry of a modified judgment in accordance with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION